**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **IN RE**: | ) | **CHAPTER 7** |
| | ) | |
| **STRUCTURE INVESTMENTS, INC.** | ) | **CASE NO. 04-03960** |
| | ) | |
| **DEBTOR** | ) | |

## MEMORANDUM DECISION

The matter before the Court is the Chapter 7 Trustee's Application for Compensation and Reimbursement of Expenses filed by Ms. Evelyn K. Krippendorf. This matter was scheduled for hearing on January 22, 2007. Ms. Krippendorf failed to appear at the hearing and the matter was taken under advisement. The Court approved the Trustee's expenses at the hearing, but requested that Ms. Krippendorf provide written support for her application, which she provided by letter dated January 24, 2007 and a further communication dated January 29, 2007. For the reasons stated below, the Court will grant the Trustee's Application in the amount set forth in this decision.

## FINDINGS OF FACT

This Chapter 7 case was filed on September 17, 2004; therefore this case is controlled by the law in effect prior to the adoption of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). The Trustee filed her Application for Compensation on December 21, 2006 seeking compensation in the amount of $6,108.65 and reimbursement of expenses in the amount of $217.51 (less $38.92 which was previously paid) for the time period September 24, 2004 through September 21, 2006. The compensation sought

is the maximum amount allowable to the Trustee on the basis of the figures she has reported by section 326(a) of the Bankruptcy Code. No objection was filed by the United States Trustee or any party in interest to the Trustee's Application. According to that Application, the total amount received by the Trustee during the administration of the bankruptcy estate is indicated to be $57,218.62, which is the amount on which the commission was calculated. The Cash Receipts and Disbursements Record filed as part of the Trustee's Final Report indicates that the Trustee received $57,172.92 during administration of the estate, an unexplained difference of $45.70.[1] This $57,172.92 figure is composed of $13,916.09 obtained from the sale of property located on Peakwood Drive; $17,015.76 from the sale of property located on Broadway Avenue plus the additional $23,500 which was awarded in realtor commission; earned interest of $263.62 and rent collected by Moore & Company Property Management of $2,477.45. The time records which Ms. Krippendorf has filed with her Application represent that she spent in all 14.50 hours of time in fulfilling her duties as Trustee. The Trustee has also provided an itemized statement of out-of-pocket expenses in the amount of $217.51.

    Of those 14.50 hours, according to her timesheet report, the Trustee spent 1.3 hours reviewing information and conducting the 341 meeting; 1.9 hours reviewing information regarding a BB&T loan and motion for relief; 6.1 hours reviewing offers to purchase property, preparing and submitting motions to sell real estate, attending a hearing one of these motions and preparing applications for appointment and compensation of a realtor; 3.4 hours reconciling bank statements, preparing trustee reports and an application for compensation for the Trustee; 1.1

---

[1] The Court assumes the remaining amount to be unrecorded interest which was credited after the Trustee calculated the proposed distribution.

hours preparing applications to employ and for compensation of an accountant and corresponding with the accountant regarding estate issues; and .70 hour on claims analysis. Ms. Krippendorf noted that she was "sure" that she spent more time working on this case than indicated on her time records as she frequently does not enter time for telephone calls or emails, but she estimates that the value of that time to be less than $1,000. Upon a review of the docket, the Court notes that Ms. Krippendorf did not include any time on her timesheet report for attending the hearing on her motion to sell on May 4, 2005. The Court also notes that the dates indicated on Ms. Krippendorf's time sheet for preparing and submitting certain documents do not correspond with the date of the actual filing of such document on the Court's electronic docket. The Court does not question, however, the time spent preparing or submitting such documents.

The Trustee filed a motion to sell property located on Peakwood Drive, which was heard on May 4, 2005. According to the Trustee's motion, the Trustee obtained the contract of sale from the buyers to purchase the property for $30,000. Neither the motion to sell that property nor the Trustee's correspondence in support of her fee application indicate as a result of what efforts on the Trustee's part such contract of sale was obtained. If it had been necessary to employ a real estate agent to sell such property for the same result, compensation to such an agent in an amount of at least $1,500 could have been anticipated. On May 6, 2005, an Order was entered granting the Trustee's motion. From the proceeds of sale, the Trustee was granted the authority to pay the reasonable costs of sale, delinquent real estate taxes and one-half of the net proceeds to BB&T to be applied to its secured claim; the Trustee to receive the remaining one-half of the net proceeds for administration in the case. On December 5, 2006, the Trustee

-4-

filed a Report of Sale, which stated that the property was sold for $30,000 on June 2, 2005, with net proceeds to the estate of $13,916.09.  The Trustee also filed a motion to sell property of the estate located on Broadway Avenue, which was heard on October 24, 2005.  On October 28, 2005, an Order was entered granting the Trustee's motion.  On December 13, 2005, an Order was entered granting the Trustee's Application to employ William Walker of Walker Commercial Services, Inc. as realtor for the Trustee at an estimated 10% sales commission.  That Application recited that the real estate firm already had the property listed for sale.  The Trustee filed her Report of Sale on December 5, 2006 stating that the Broadway Avenue property was sold for $235,000 on November 15, 2005, with net proceeds to the estate of $17,015.76.  Mr. Walker was awarded compensation in the amount of $23,500 for services rendered in connection with the sale of this property.  This amount was paid over to the Trustee pending court approval of the agent's compensation and was then disbursed back to the firm once that approval had been obtained.  The Trustee's also filed an application to appoint Barry Strickland, CPA in this case.  This motion was granted on March 8, 2006 and Mr. Strickland was subsequently awarded compensation of $1,930.90 for preparation of tax returns.  According to the Trustee's Final Report and Proposed Distribution, the services rendered by the Trustee resulted in the recovery of $57,218.62 to the estate, with anticipated dividends to unsecured creditors of 17.021195% of their aggregate claims, a total sum of $25,376.94.  If the realtor's commission for the sale of the Broadway Avenue property were excluded, which it would have been if court approval of such compensation had been obtained at the time that approval of the underlying sale transaction had been obtained, the net amount obtained by the estate for payment of administrative expenses and distribution to creditors would have been $33,718.62.  If that had occurred, that one difference would have reduced the Trustee's maximum allowable compensation under 11 U.S.C. § 326(a)

by $1,989.05 (5% of the amount of the administered estate in excess of $50,000 and 10% of the balance of the commission). Conversely, however, if the total gross sale price proceeds of the Peakwood and Broadway properties were included in the value of the bankruptcy estate, the aggregate total of the estate in some sense administered by the Trustee , including rent and interest, would have been $267,786.77. The point is that depending on who disbursed the real estate settlements, the degree of the Trustee's responsibility or success can be either reduced or magnified.

The Trustee in this case did not file an application requesting employment of counsel for the trustee. The Trustee asserts that "other trustees would probably have immediately employed themselves as attorney for the trustee and acted as the closing attorney on the sale of the real estate. They would be compensated as trustee and as attorney for the trustee. Compensation would be based on the sales price, and not just the net that came into the bankruptcy estate. . . " Ms. Krippendorf notes that she considers the dividend to unsecured creditors when deciding whether to employ herself or another attorney as counsel for the trustee. In her Application, the Trustee indicated her hourly rate to be $180.00. The Trustee, in support of her application, noted that she has been using the $180.00 rate for her trustee duties as such duties become "fairly routine," but that her hourly rate as an attorney has been $200.00. The Trustee requested that she be allowed to amend her application using $200.00 as her hourly rate instead of $180.00. If the Court were simply to award compensation to Ms. Krippendorf equal to $200.00 per hour times 14.5 hours of recorded time entries, the resulting total would be $2,900.00.

The Court has previously found that the expenses incurred were actual and necessary expenses of administration of the estate. Based on the evidence before the Court and

on the basis of the reasoning set forth later in this decision, the Court finds that the requested compensation, $6,110.93, more than 10% of the funds which actually passed through her trustee account, is excessive.

The Court finds that the fiduciary services rendered by the Trustee in this case were appropriate for the estate's needs and were timely rendered. The result was that the unsecured creditors will receive approximately 17 % of their claims, a sum somewhat in excess of $25,000. On the other side of the ledger, the work required was not complicated and the result obtained, while beneficial, cannot be reasonably termed extraordinary in nature or effect. The transaction from which the largest portion of the funds obtained for the creditors was generated was the sale of the Broadway Avenue property, a transaction resulting from the previously noted efforts of Mr. Walker, who already had the property listed for sale prior to the Trustee's entrance into the matter, and for which services the estate has paid very handsome compensation of $23,500. There is no indication that the Trustee explored the availability of real estate brokers interested in marketing the property at a lower commission rate or made any attempt to negotiate any different terms than the 10% commission approved for Mr. Walker. Furthermore, court approval of his firm's retroactive employment on behalf of the estate was not sought until more than a month after court approval of the sale transaction had been obtained. The other receipts were from rents collected by the property management company already in place at the inception of the case, interest on money market account balance, and the Peakwood Drive property sale proceeds. Nothing before the Court indicates to what extent, if any, this sale of the Peakwood Drive property resulted from the Trustee's own efforts to effect it, other than filing a motion to obtain court approval for it, or conversely, was something which just "fell into her lap", as the old cliche goes. Unfortunately, the actual facts of the Trustee's contributions to

Document    Page 7 of 15

such sale have been left to the Court's speculation. The Trustee does not contend that she rendered exceptional services in this particular case or that exceptional results for the creditors were obtained. Considering all of the facts and circumstances noted above, the Court finds that the reasonable value of the fiduciary services provided in this case by the Trustee is $3,750. *See In re Garry Carroll Trucking Inc.*, No. 00-03935 (Bankr. W.D. Va., June 3, 2004).

CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. The present dispute is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(A). *See Harman v. Levin (In re Robertson)*, 772 F.2d 1150, 1153 at fn. 3 (4th Cir. 1985).

This Court has the authority to award "reasonable compensation for actual, necessary services" rendered by a bankruptcy trustee and "reimbursement for actual, necessary expenses" under section 330 of the Bankruptcy Code. In determining what is "reasonable compensation" the Court is instructed as follows:

> (3) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

> (E) whether the compensation is reasonable based on
> the customary compensation charged by comparably skilled
> practitioners in cases other than cases under this title.
>
> (4) (A) Except as provided in subparagraph (B), the court
> shall not allow compensation for –
> > (i) unnecessary duplication of services; or
> > (ii) services that were not –
> > > (I) reasonably likely to benefit the
> > > debtor's estate; or
> > > (II) necessary to the administration of the case.
>
> (B) In a chapter 12 or chapter 13 case in which the
> debtor is an individual, the court may allow reasonable
> compensation to the debtor's attorney for representing the
> interests of the debtor in connection with the bankruptcy
> case based on a consideration of the benefit and necessity
> of such services to the debtor and the other factors set forth
> in this section.

11 U.S.C. § 330(a)(3) and (4). Payment of compensation to Chapter 7 Trustees, however, is subject to a ceiling prescribed by section 326(a) of the Bankruptcy Code as a maximum percentage of the property distributed by the Trustee as follows:

> (a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a). Accordingly, the Court is obliged to determine first what is reasonable compensation and then make sure that such compensation does not exceed the maximum permitted level authorized by section 326. *In re Miniscribe Corporation,* 309 F.3d 1234, 1241 (10th Cir. 2002); *In re Computer Learning Services, Inc*., 285 B.R. 191, 229-30 (Bankr. E.D. Va. 2002); *In re JKJ Chevrolet, Inc.,* 2000 Bankr. LEXIS 614, *3 (Bankr. E.D. Va. 2000); 3 *Collier on*

*Bankruptcy* § 326.02 [1] at p. 326-4 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev). As Judge Mayer noted in the *Computer Learning Services* opinion, *supra*, the compensation payable to a Chapter 7 trustee "is not a commission based on distributions and the maximum fee permitted is not the presumptive fee for the trustee." 285 B.R. at 229-30.

Compensation awarded to trustees and other professionals pursuant to 11 U.S.C. § 330(a) is of course an administrative expense of the bankruptcy estate. One who seeks an allowance of an administrative expense in bankruptcy has the burden of proving his or her entitlement to same. *In re Merry-Go-Round Enterprises*, *Inc.*, 180 F.3d 149, 157 (4th Cir. 1999); *In re Narragansett Clothing Co.*, 210 B.R. 493, 498 (1st Cir. BAP 1997) ("The Trustee bore the burden of proving that his . . . [requested] fee was reasonable."). The fiduciary duties of the trustee must be compensated as such and the trustee's counsel may not be compensated for services statutorily required of the trustee. *In re J. W. Knapp Company*, 930 F.2d 386, 388 (4th Cir. 1991).

The Application before the Court concerns the Trustee's fiduciary rather than legal services. Accordingly, the Court concludes that it is appropriate to look for guidance primarily in the words of section 330 and those court decisions which have addressed specifically the allowance of compensation to bankruptcy trustees. For example, the case of *Harman v. Levin, supra*, a Fourth Circuit Court of Appeals opinion, dealt with compensation awarded to debtor's counsel in a Chapter 13 case, not compensation to the Trustee. The Court is not aware of any decision of such Court dealing specifically with the subject of determining reasonable compensation to bankruptcy trustees. This subject was addressed at some length, however, by Judge Mayer of the Bankruptcy Court for the Eastern District of Virginia in the *Computer Learning Centers* case, *supra*. That case, as the one before this Court, deals with compensation to

-9-

a Chapter 7 Trustee who is an attorney. The Court held that in such circumstances, the "trustee's hourly rate should generally be the same as his attorney hourly rate provided that it does not exceed the prevailing market rate." 285 B.R. at 230. Furthermore, such hourly rate should not be adjusted upward due to the size of the case, *id*., and that although the complexity of a case might justify an adjustment to the compensation derived from the use of the hourly rate alone, no adjustment was called for in that particular case because the complexity was reflected in the amount of time spent on the case. 285 B.R. at 231. Judge Moon of the District Court for the Western District of Virginia has issued an opinion dealing with a Chapter 7 Trustee's appeal of compensation awarded to him by the Bankruptcy Court. That opinion dealt with three separate cases where Judge Anderson of this Court reduced the fee applications of Mr. Scott, the Chapter 7 Trustee, from the requested amounts permissible under 11 U.S.C. § 326(a) to the exact compensation derived by applying the Trustee's normal hourly rate for legal services to the amount of time expended by him as Trustee in such cases. Although Judge Moon held that the Bankruptcy Court could adjust a trustee's compensation "upward or downward" when utilizing a lodestar approach, such Court was well within its "broad discretion" in determining trustee compensation when it declined to make any such adjustment in the applications before it. *In re Bankruptcy Appeal of W. Stephen Scott*, Docket No. 6:03CV00036 (W.D. Va., March 26, 2004).

Congress has instructed this Court to consider "all relevant factors" in determining what is "reasonable compensation". 11 U.S.C. § 330(a)(3)(A). The Court believes that the quality of the result obtained as a consequence of the services rendered is one of those factors which ought to be considered, especially because the Court is required to consider the "value of such services". *Id*. The 10th Circuit Court of Appeals in its opinion in the *Miniscribe Corporation* case, *supra*, held that the result obtained is an important factor to be considered in determining reasonable

-10-

trustee compensation, suggesting that "this factor is better considered as merely one of the *Johnson* [*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)] criteria for determining the multiplier, if any, to be applied to the lodestar amount, rather than the *sine qua non* of the reasonableness calculation." 309 F.3d at 1243. It must be noted, however, that the Supreme Court in determining reasonable compensation for legal services has used language which suggests caution in deciding to enhance compensation calculated by applying a reasonable hourly rate to the time expended because a very satisfactory result has been obtained:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed *in some cases of exceptional success an enhanced award may be justified*.

*Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (emphasis added). Unlike compensation authorized for professional services provided to the bankruptcy estate or debtor, as the case may be, which may be paid at the full "time value" thereof, assuming that the estate is administratively solvent to pay it, the limit applicable to Chapter 7 Trustees under section 326 will mean that in some, perhaps indeed in many, cases the "time value" of, or charge for, the Trustee's time may not be obtained because it exceeds the statutory cap imposed by section 326. Furthermore, in a case where the result obtained by the Trustee's efforts has been adversely affected by the Trustee's negligence or nonfeasance, the Court would certainly have no hesitation in reducing the amount of the Trustee's charged time, even if it were less than the section 326 cap, if necessary to assure that the results of poor performance were visited upon the Trustee rather than the general creditors. *See In re Kitchen Lady, Inc.*, 144 B.R. 544, 548-49 (Bankr. M.D. Fla. 1992).

No objection was filed by the United States Trustee or any party in interest to the Trustee's Application. As a practical matter, at least in the context of this case and the amount at issue here, this translates into the implied consent of the United States Trustee. On purely

-11-

economic terms it is rarely the case that an individual creditor can justify the expense of even investigating whether any particular fee application of any individual or entity providing services to a bankruptcy estate is reasonable or unreasonable, much less thereafter actually filing and prosecuting an objection to such fee application. Perhaps it is not too idealistic to suggest that those whose interests are affected by the operation of the bankruptcy court system assume that as a general proposition the decisions made by bankruptcy courts are in accord with the language and purposes of the Bankruptcy Code. One of the provisions of the Code is section 330 which provides that the Court "may award . . . reasonable compensation" for services rendered for the benefit of the bankruptcy estate, which compensation may be less than the amount sought by the person who has provided them. 11 U.S.C. § 330(a)(2). Even in the absence of an objection by a party in interest to a particular motion, this Court has been reminded that it has "an independent duty" to decide questions before it in conformity with the applicable statutory authority provided by Congress. *United States v. Easley*, 216 B.R. 543, 544 fn. 1 (W.D. Va. 1997) (bankruptcy court has responsibility to ascertain that proposed Chapter 13 plan is in conformity with statutory confirmation requirements.) While it is no doubt a very important part of the responsibility of the United States Trustee to review fee applications to be paid from the bankruptcy estates and when appropriate to object to them, Congress did not establish a system in which bankruptcy trustees' compensation would be determined by the United States Trustee, subject only to a right of appeal to the Court. On the contrary, it imposed this perhaps unwelcome responsibility to determine "reasonable compensation" upon the bankruptcy court[2], subject of course to a right of appeal to the

---

[2] *See In re A. H. Robins Co., Inc.,* 182 B.R. 128 (Bankr. E.D. Va. 1995) *aff'd*, 86 F.3d 364 (4th Cir. 1996), *cert. denied*, 519 U. S. 993 (1996); *In re Clark*, 223 F.3d 859 (8th Cir. 2000); *In re Great Sweats, Inc.*, 113 B.R. 240 (Bankr. E.D. Va. 1990); *In re Saunders*, 130 B.R. 208, 212 (Bankr. W.D. Va. 1991).

District Court to any party in interest affected by such determinations. In summary, it is the burden of any person seeking compensation from the bankruptcy estate to establish the appropriateness of the fact and amount of such compensation, not the obligation of other affected parties to prove the contrary. When it is the Trustee's burden to prove the nature, quality, effectiveness and value of her fiduciary services, she cannot expect the Court to assume that which she has neither represented nor proven.

The Court acknowledges that the Trustee's services are contingent in nature and he or she is not assured of any significant compensation for his services. In many cases he or she will perform services for which he or she will not be paid. The same unfortunate result, however, may befall any professional hired by the estate who performs services which the estate is then unable to pay. On the other hand, the Trustee, once being appointed to the panel of trustees, which after all is a position sought by the individual rather than one which he or she is compelled to accept, is provided a regular stream of cases, or "business", without having to make efforts continually to replenish an existing "stable" of clients. Thereby the Trustee has the frequent opportunity, if an attorney, to obtain the employment of himself or herself to render professional services to the estate at rates acceptable to such attorney, subject to the approval of the Court.

The argument that a Chapter 7 trustee should benefit from cases where he or she may receive more than his or her time valued at legal billing rates, just as he or she suffers from those many cases where his or her compensation is much less, has a certain appeal. On closer examination, however, this contention is not as strong as it initially appears. First, the professional's hourly rates are presumably set at a level which recognizes that he or she most likely will not be compensated for everything actually done. Second, any professional person who provides services to the estate faces the prospect that it may be unable to pay for such services in

-13-

full, or in some cases, even at all, nevertheless, no suggestion is made that the bankruptcy estates which can afford to pay the professional an excess fee should do so in order to make up for those where the professional suffers a loss. Third, the opportunity to serve as a Chapter 7 Trustee, or as counsel to a Chapter 7 Trustee, or both, offers a capable bankruptcy attorney a nearly unique opportunity to demonstrate his or her abilities, to work with creditors, to increase his or her professional reputation, and to make invaluable contacts likely to generate future legal business. Fourth, but actually of primary importance, it is this Court's responsibility to award compensation pursuant to the statutory scheme enacted by Congress, not devise another one which might seem more appropriate to the Court. Certainly Congress could have chosen to provide that Chapter 7 Trustees were to be paid on a strict commission basis, but it did not choose to do so under the law applicable to this case, preferring to establish a system where a calculated percentage or "commission" was a ceiling on compensation, not its determinant.

      The Trustee also advances an equitable argument that chapter 7 trustees ought to receive the maximum amount allowable under the statute, especially when no party in interest objects, because they also run the risk that sometimes their very diligence will cause bankruptcy debtors who have originally filed chapter 7 petitions to exercise their one time right to convert to chapter 13, thereby depriving the chapter 7 trustee of any compensation for his or her services. The Court agrees that such can be the result and that it is unquestionably an inequity to the chapter 7 trustee,[3] but nevertheless the Court is bound to apply the Bankruptcy Code as enacted, not to refuse to apply it when the result seems inequitable to the Court with no corresponding advantage to any party in interest.

---

[3] *See In re Evans*, 344 B.R. 440 (Bankr. W.D. Va. 2004) and *In re Carr*, No. 05-73657 (Bankr. W.D. Va. November 14, 2006).

To the extent that it is a mixed question of law and fact, the Court concludes that compensation of $3,750 plus expenses of $217.51 to the Trustee will fairly and adequately compensate for the services rendered by her in this case. Such determination will be set forth in an order to be entered contemporaneously herewith.

This 7th day of February, 2007.

_____
UNITED STATES BANKRUPTCY JUDGE